**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

*vs.*                                                    **CASE NOS. 1:03CR47-1/1:06CV18**

**KOFIE AKIEM JONES,**

**Defendant.**

## OPINION/ REPORT AND RECOMMENDATION

### Statement of Relevant Procedural History

On January 28, 2004, a jury convicted Defendant of conspiracy to defraud the United States (18 USCA §371), bank robbery by force or violence (18 USCA §2113A), assault with a deadly weapon during a bank robbery (18 USCA §2113D), brandishing a firearm during a bank robbery (18 USCA §924C), interference with commerce by threat or violence (18 USCA §1951), and brandishing a firearm during a bank robbery. Defendant was sentenced to six concurrent life sentences on May 17, 2004. Defendant timely filed his notice of appeal on May 26, 2004. The Fourth Circuit denied Defendant's appeal and affirmed his sentence on February 11, 2005.

Jones filed his motion to vacate his sentence under 28 USCA §2255 on February 6, 2006 [Cr DE 186 and Civ DE 1][1]. Jones filed a motion for leave to amend or file supplement to his §2255 on March 6, 2006 [CrDE 188]. During March, 2006, Harry Tun completed the requirements for appearance as *pro hac vice* attorney, with Todd La Neve as local counsel, for Jones in his §2255 case. Supplements were made to the original §2255 filing during April, 2006 [CrDE 193, 194, 195

---

[1]Documentation filed in Jones' §2255 was filed in the criminal case file and in the §2255 civil file. A review of both dockets is required to obtain a complete history of the filings that pertain to the §2255 case.

and CivDE 4, 5, 6]. Jones filed a motion and proposed order directing a judgment that the United States had conceded his motion and vacating his conviction and sentence on May 26, 2006 [CrDE196, 197].

On May 30, 2006 the United States filed its response to Jones' §2255 motion [Cr DE 198 and CivDE 8].

On July 12, 2006 Jones filed his third motion to vacate [CrDE 200]. The United States responded on July 19, 2006 [CrDE 201].

By Order dated August 9, 2006, Jones' motion to concede [CrDE196 and 197] was denied and the matter was referred to the undersigned Magistrate Judge for hearing. [CrDE 202].

The matter was originally set for hearing on November 28, 2006. It was continued a number of times to accommodate schedules of counsel and finally heard on May 16, 2007.

Kofie Akiem Jones appeared, in person, and by his counsel, Harry Tun and Todd La Neve, and the United States appeared by Assistant United States Attorney Robert H. McWilliams, Jr. No motion to sequester witnesses was made. The undersigned proceeded to hear opening statements; the testimony of the following duly sworn witnesses: John Elder, Tahisha Brooks, Kofie Akiem Jones (after he was advised by the undersigned of his rights), Jerald E. Jones, James M. Pool and Michael Kocher; and closing arguments. The undersigned also received exhibits and a transcript of the trial as evidence, which were reviewed and considered in preparation of this Opinion/Report and Recommendation.

## Contentions

**Defendant Contends:**

"[H]is trial counsel's performance fell below the objective standard of reasonableness and

that trial counsel's performance prejudiced the Defendant in violation of the Sixth Amendment" by reason of:

A.   His trial counsel's "defective cross-examination of the government's witness, Joyce Calvert."

B.   His trial counsel's "failure to investigate his alibi defense" (CrDE186).

C.   His trial counsel's failure "to put the Defendant's only witness on the stand named, Ms. Tahisha Brooks" (CrDE 193).

D.   His trial counsel's failure "to hire his own fingerprint analysis to analyze the fingerprints found on the gun" (CrDE 193).

E.   His trial counsel's neglect "to pursue the claim possibly raising a mistrial issue" when "one of the jurors came out of the wrong exiting doors, and saw this Defendant in shackles" (CrDE 193).

## Discussion

General

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

"[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel

3

plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland v. Washington, 466 U.S. 688, 685 (1984) citing Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.E. 268 (1942); Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64, 77 L.Ed. 158 (1932).

"An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Strickland v. Washington, *supra* at 685.

"[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970). It is universally held that "the proper standard for attorney performance is that of reasonable effective assistance." In other words there must be some showing that counsel's performance fell below "an objective standard of reasonableness." Strickland v. Washington, *supra* at 687-688 (internal citations omitted). The Sixth Amendment does not define any particular requirements of effective assistance. Instead, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* Counsel's duty includes, but is not limited to "loyalty," "to avoid conflicts of interest," "to advocate the Defendant's cause," "to consult with the Defendant on important decisions," "to keep the Defendant informed of important developments in the course of the prosecution" and "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland v. Washington, *supra* at 688.

In determining a claim of ineffectiveness, the Court must perform its reasonableness inquiry looking at the totality of the circumstances. It must be highly deferential and not fall prey to second-

4

guessing counsel's assistance after an unsuccessful defense. In other words, the Court, to the extent possible, must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." A strong presumptions exists that "counsel's conduct falls within the wide range of reasonable professional assistance." The challenging defendant must overcome this presumption. The purpose of the inquiry is "to ensure that criminal defendants receive a fair trial" not to "improve the quality of legal representation." Strickland v. Washington, *supra* at 689-690.

"Counsel . . . can . . . deprive a Defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance.'" Strickland v. Washington, *supra* at 686 citing Cuyler v. Sullivan, 446 U.S., at 344, 100 S.Ct. at 1716. *Id.*, at 345-350, 100 S.Ct., at 1716-1719)[2].

In judging what constitutes "actual ineffectiveness" the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

In other words, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted Defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether , in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

---

[2]Cuyler v. Sullivan is distinguishable from the case at bar because it involved an actual conflict of interest which adversely affected the lawyer's performance rendering his assistance ineffective. There is no evidence or even suggestion that Jones' retained counsel, Pool, had any conflict of interest.

In making that determination, the court should keep in mind that counsel's function, as elaborated in professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, *supra* at 690.

There are two components to a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of his conviction. They are: "First, the Defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the Defendant by the Sixth Amendment. Second, the Defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the Defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, *supra* at 687.

Even if counsel makes a professionally unreasonable error or errors, the conviction may not be set aside unless that error or errors actually prejudiced the defense to the point that the outcome of the proceeding was unreliable. Strickland v. Washington, *supra* at 692. The burden of proving actual prejudice is on the defendant. "It is not enough for the Defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . ., and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." The test for prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, *supra* at 693-694. In the challenge of a

conviction based on ineffective assistance of counsel, the reviewer looks at the totality of the evidence that was before the jury and determines if there is "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, *supra* at 695.

"There are essentially two categories of decisions made by a criminal Defendant's trial counsel: those decisions, deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent. *See* Brown, 124 F.3d at 77. Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Teague, 953 F.2d at 1531. The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, *see* Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to waive a jury trial, see Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942), the decision to pursue an appeal, *see* Fay v. Noia, 372 U.S. 391, 438-40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and, as noted in Part III of this opinion, the decision to testify at trial.

"The decision whether to file a pre-trial motion to suppress a confession is a classic tactical decision. Trial counsel has superior experience with the criminal process and detailed, objective knowledge of the strengths and weaknesses of the defendant's case. Trial counsel also is in a far better position to assess the meritoriousness of a pre-trial motion to suppress a confession. We hold that trial counsels' decision not to file a pre-trial motion to suppress Sexton's confession was binding on Sexton and, therefore, trial counsel were not constitutionally ineffective for allegedly failing to secure Sexton's consent. Accordingly, the state court's application of Strickland to this claim was not

unreasonable." <u>Sexton v. French</u>, 163 F.3d 874 (4th Cir. 1998 ).

In the instant case, Defendant Jones argues that his trial counsel, James Pool, erred during cross-examination of witness, Joyce Calvert; by failing to investigate a possible alibi defense; by failing to put Tahisha Brooks on the stand to testify; by failing to hire his own fingerprint analyst to analyze the fingerprints found on the gun used in the robbery; and by failing to pursue a claim for a mistrial arising out of a juror allegedly seeing Jones in shackles.

A.      Cross-examination of Joyce Calvert

The United States called Joyce Calvert, an employee of the Kroger Store which was the subject of the attempted robbery of the Bruceton Bank, to testify during Defendant's trial. Calvert parked her car on the side of the building designated for employee parking. She observed a white Mercedes occupied by persons in the driver's seat and the passenger's seats. The car was running. She noticed the rear windows were "real dark, shaded." (Trial Transcript p. 154). She was not able to determine if anyone occupied the back seat of the automobile. She glanced at the parked Mercedes twice as she prepared to exit her car and as she exited her car. She went into the store and observed three people: one person standing by the door, a second person proceeding to the Bruceton Bank, and a third person inquiring where the restroom was located. She was not asked to identify the Defendant as an occupant of the white Mercedes during her direct examination.

Defendant's counsel, James Pool, testified at the habeas hearing that he decided to cross examine her to get her to admit that she did not see the Defendant in the Mercedes. He knew she had not been shown a photo array.[3] He knew she had not given the police a description of the three people that she saw in the store. (Trial Transcript p. 157). He knew the windows of the Mercedes

_____

[3]Pool testified the United States maintained an open file in Jones' case.

were shaded and very dark limiting her visibility into the rear seat of the car. He knew Defendant contended he was not present at the robbery scene. He also knew that Calvert only had a moment or two to look into the Mercedes as she walked past its darkened windows. Based on this knowledge and the fact that Calvert had not volunteered an identification of Defendant during her direct testimony, Pool elected to cross examine her in the following manner to get a confirmation that Defendant was not in the car or inside the Kroger Store - a reverse alibi:

q.    Were you able to recognize later any of the three individuals that you may have seen in the store?

a.    Uh, I believe that it was that it was the three that came in just by their actions and looked similar to them, yes.

q.    At least two of whom you saw, you believe, in the white Mercedes?

a.    Yes.

q.    So there may have only been three total in the Mercedes as far as you know?

a.    I don't know, I saw three in the store. I could only see two in the car.

q.    You only saw two.

a.    Yes.

q.    Okay. Now, you said one asked where the restrooms were?

a.    Yes, sir.

q.    Were you ever shown photographs of any of these people who you believe were in the store?

a.    I wasn't shown - - -no, I was not shown photographs of them.

q.    Did you have occasion to give any law enforcement personnel a description of the three people that you saw in the store?

a.   Just vaguely, that they were male, obviously, and Afro-American and that the one had a loose shirt on, kind of bluish, like two shirts, one loose shirt over another shirt, and small frame. And the other, the one I don't really remember at all, but he looked like - - and the one was a bigger frame, I think light clothing.

q.   Have you ever seen an individual by the name of Kofie Jones to your knowledge? Do you recognize the name?

a.   No, I do not recognize the name.

q.   Your Honor, with the Court's permission I would ask that my client take the stand.[4]

THE COURT: All Right.

q.   Ms. Calvert, this is Mr. Kofie Jones. I am going to ask you, have you ever seen him before?

a.   He looked similar to the driver.

q.   He looked similar but - - you can't positively identify him, correct; is that right?

a.   He is - -

q.   I'm sorry, did you say yes?

a.   I do believe he was the driver.

q.   Can you positively identify him, yes or no?

a.   No.

Defendant Jones' defense revolved around his ability to convince the jury he was not present at the robberies. He had told Pool he was at the apartment of Mardana Shaw all day and did not participate in the planning or execution of the attempted robbery of the Bruceton Bank located within

---

[4]Presumably this meant that Pool asked for permission to have Jones stand in his place at counsel table during the final cross-examination of Calvert.

the Kroger Store or the robbery of the Huntington Bank located in the Giant Eagle Store.

However, two accomplices, L. Jones[5] and Cunningham, testified under plea bargain agreements that Jones was involved in the robbery and was in the white Mercedes get away car.

The decision to cross examine Calvert to solidify her *non-identification* of Jones was a tactical decision made by counsel in the midst of trial. It was made for a legitimate strategic purpose of using a neutral witness who had the opportunity to see and could show that Defendant was not present in or out of the store and bank at the time of the robbery. If it worked it would have been strong evidence to counter the effects of the two co-defendants who had testified Defendant was in the get away car.

The decision to cross-examine Calvert is one of those decisions that "primarily involve trial strategy and tactics" such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" and can be made without the defendant's consent. Teague, 953 F.2d at 1531. It would be error for the Court to look at the decision to cross-examine with the hindsight that it did not work out as well as Counsel Pool had hoped and therefore it was a mistake. Counsel must be permitted to rely on the bona fides of his client. In this case, Counsel Pool had been told by Jones that Jones was not present. Accordingly, Counsel Pool had every reason to expect Calvert would not identify Jones in court as being one of the people in the white Mercedes. Such an expectation is supported by the fact that Calvert had testified at trial with Jones sitting at counsel table and had not identified him or given a description of him at any time during her direct examination. In this instance, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct"

---

[5] A different "Jones" than the criminal Defendant "Kofie A. Jones."

11

to which the Court must be highly deferential. <u>Kratsas v. United States</u>, 102 F.Supp.2d 320, 322 (D.Md. 2000). Counsel must be given leave to "choose a trial strategy from within a wide range of acceptable strategies. <u>Clagett v. Angelone</u>, 209 F.3d 370, 380 (4th Cir. 2000). After making "every effort . . . to eliminate the distorting effects of hindsight" and evaluating "the conduct from counsel's perspective at the time", I conclude no error was made in cross-examining Calvert on the identity issue. <u>Strickland</u>, 466 U.S. at 689.

Even if it was a mistake to cross examine Calvert, Defendant did not suffer and does not show it "actually prejudiced the defense to the point that the outcome of the proceeding was unreliable." First, Calvert could not actually identify Defendant Jones as being in the white Mercedes. Second, at worst, Calvert testified Jones looked like one of the people she saw in the car. While it is true that Calvert saying Jones looked like one of the men in the car is worse that saying she got a good look at the people in the car and Jones was not one of them, the testimony of Defendant's accomplices clearly placed Defendant Jones in the get-away car and the robberies. Jones argues he would have been better off without Calvert's cross-examination testimony because he would only have had to contend with the two co-conspirators who had turned Government witnesses. He would then be able to argue that the co-conspirators had lied and their lies were not supported by any independent witness identification of the Defendant. Jones would have the Court speculate the jury would have been more inclined to discredit the testimony of the two co-conspirators had it not heard the cross examination testimony of Calvert.[6] To so speculate ignores

---

[6]Pool argued to the jury that the two co-conspirators' testimony was made up of lies. He used the testimony of a driver (Randy Davis) who had been run off the road by the Mercedes to challenge the co-conspirators' testimony. The driver testified he only saw three people in the five-seat car. In rebuttal closing, the United States pointed out that Davis may not have been the witness with the best opportunity to identify Jones. Instead he argued "No, the person that had

a lot of circumstantial evidence the jury could consider in evaluating the co-conspirators' testimonies (Leon Jones and Marco Cunningham) such as: 1) the fact Jones and the co-conspirators came from the DC area to West Virginia in Jones' Mercedes; 2) Jones and the others were at Shaw's house before the robberies and were seen talking among one another in either the bedroom or the bathroom prior to the robberies; 3) Jones did not express concern that the others were gone in his Mercedes with approximately $9,500 of money he alleges was his along with a gun with an obliterated serial number, a mask, and walkie talkies used in the commission of the robbery ; 4) Jones did not question the presence of a rubber glove on the console of his Mercedes.

Actual prejudice requires more. "Prejudice," for purposes of an ineffective assistance of counsel claim, means that but for counsel's unprofessional error, there is reasonable probability that result of proceedings would have been different. Jones has failed in his burden of showing how the outcome would have been different if his counsel had not erred.

B.      Failure To Investigate Alibi Witness

Jones testified during his §2255 hearing that he had stayed at Mardana Shaw's apartment during the robberies. Therefore, he claims he was not at the robberies and could not have been seen in the white Mercedes automobile. Pool's §2255 testimony confirms he was told that Jones was not in the Mercedes and not present at the robberies. Jones testified at the §2255 hearing that he told Pool that a woman and her child were outside while he was standing in front of Mardana Shaw's apartment on the day of the robberies. He speculated they could see him. Jones did not identify the woman or the child in his §2255 testimony. No woman or child came forward during the §2255

the best opportunity to look into that car was Mrs. Calvert, the one who said: 'I do believe he was the driver.'" Trial Transcript, vol. 2, p. 565-566.

13

hearing to support Jones's claim. Mardana Shaw did not come forward at the §2255 hearing and testify relative to a woman and child living in the vicinity of her apartment at the time of the robberies. Pool testified during the §2255 hearing that he was not aware of any witnesses who could verify Jones was at Mardana's apartment during the robberies. Pool also testified he was not given any names or addresses of witnesses who could identify anyone who could provide Jones with an alibi during the time of the robberies. In short, Pool testified he was told by his client that he was inside of the apartment alone all day and Pool believed him. Pool did not hire an investigator and did not himself investigate the possible existence and identity of an alibi witness.

The United States filed its Motion - "Request For Notice Of Alibi Defense" (Docket Entry 80 in 1:03CR47-01) on January 13, 2004. FRCrimP 12.1 (a)(2)(A) and (B) require defendant to respond to the request in writing within ten (10) days stating the specific place where the defendant claims to have been at the time of the alleged offense as set forth in the "Request" and to give the name, address, and telephone number of each alibi witness on whom the defendant intends to rely. Defendant Jones did not respond to this request.

Having heard and considered the §2255 testimonies of Pool and Jones, the undersigned finds by a preponderance of the evidence that Jones did not tell Pool of the woman and child outside of Mardana Shaw's apartment pre-trial. To conclude otherwise is to ignore the facts supporting Pool's testimony and version of events: Defendant did not state the name or any description of the alleged woman or child; he did not provide a time frame for his alleged being outside of the house in the proximity of a woman and child; he did not provide a description of alleged woman and child in §2255 testimony, much less to his counsel prior to trial; and no person, including but not limited to Mardana Shaw, ever came forward to provide a name, description, or location of the alleged woman

14

and child. Supporting this conclusion is the fact that retained counsel, James Pool, did not respond to the United States' 12.1 Request within 10 days of its filing on January 13, 2004.

Absent corroboration , there is nothing to prevent this or any other defendant from creating a post trial alibi witness when one did not exist pretrial.

In addition, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the Defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the Defendant and on information supplied by the Defendant. In particular, what investigation decisions are reasonable depends critically on such information." Jones' telling Pool that he was at the apartment all day alone was critical and sufficient to justify Pool not looking for anyone to corroborate the story. Even if Jones had suggested to Pool that someone may been outside the apartment at the same time he was outside and may have seen him, absent something to indicate who these people were, there would be no basis for Pool to conduct a search. One would have thought that Mardana Shaw, the person with whom Jones and the other three defendants spent the previous night, would have been able to supply the identity of a woman and child had Jones given her a description. There is no evidence this was done.

Finding that Jones did not tell Pool pre-trial of the woman and child potential alibi witnesses or anything to suggest that anyone could testify in support of his own assertion that he was at Mardana Shaw's apartment all day alone "precludes the conclusion that the attorney was ineffective for failing to investigate or present" those witnesses. United States v. Chester, 891 F.2d 286 (4th Cir. 1989)(unpublished - copy attached).

C.      Failure To Call Tahisha Brooks As A Defense Witness

Pool listed Tahisha Brooks as a potential defense witness (Docket Entry 93 1:03cr47). Tahisha Brooks testified she sent Pool records from her and Defendant's joint business ventures to

review and use to help prove: 1) Defendant was in possession of approximately $9,500.00 of their joint money at the time he was picked up in Uniontown, Pennsylvania post bank robbery; 2) Defendant's possession of cash of his own would be convincing evidence of his having no need or motive to rob a bank; and 3) that his presence in West Virginia and Pennsylvania was for the purpose of buying a piece of equipment for use in one of their businesses.

Brooks drove to West Virginia for the start of Jones' trial. She made contact with Pool and they arranged to meet at Brooks' hotel room on the night of the first day of trial. Pool testified he arrived at the hotel room and Brooks showed him some papers which he looked through and handed back to Brooks. Brooks testified that Pool sighed, thumbed through the papers and said: "I can't use this information; I don't want to open a can of worms." He then tossed the papers on the bed and told her that she would hurt Defendant's case if she stayed and the best thing she could do would be to leave the jurisdiction. Brooks was not called as a witness and none of the documentation she brought to West Virginia was used in Defendant's criminal trial

During the §2255 hearing, Brooks produced the following documents, which she had shown Pool on the first night of Jones' trial:

| Defendant's Exhibit HC1 | A business card for "Sparkling Clean" with Kofie Jones' name and a telephone number on it. |
|---|---|
| | 32 Sequentially numbered Customer Order slips (receipts for "Slimming 2 B Healthy & Fit" from 5/01/03 to 11/08/03 and another slip dated 5/16/03. |
| Defendant's Exhibit HC2 | Virtually the same receipts for the same time period for "Slimming 2B Healthy & Fit" as supplied in Defendant's Exhibit HC1. |

Defendant's Exhibit HC3    EOB's (explanation of benefit forms) for maternity leave disability payments made to Tahisha Brooks between 10/02/02 and 4/01/03.

Defendant's Exhibit HC4    Maryland Sales & Use Tax License for Tahisha Brooks as "Top Flight Fashions issued 12/298/00; Government of the District of Columbia Office or Tax and Revenue Sales & Use Tax Certificate of Registration for Tahisha Brooks as "Real Urban Gear In Dimensions" issued 3/06/01; and a business card for "Sparkling Clean" with the name of Kofie Jones and a telephone number on it; Notification from the Department of Treasury IRS of assignment of an employer identification number for "Universal Staffing Associates" dated 7/26/2001; Notification from the Department of Treasury IRS of assignment of an employer identification number for "KJS Towing Inc." c/o Kofie Jones dated 2/27/2003; Notification from the Department of Treasury IRS of assignment of an employer identification number for "Voices of Street Life" to Kofie A. Jones dated 2/ 09/2001; Comptroller of Maryland 8/28/02 notification to Kofie A Jones and Tahisha Brooks that the Business Sales and Use Taxes for "For Your Amusement" were delinquent; Notification to Tahisha Brooks from the Department of Treasury IRS of assignment of an employer identification number for "Slimming 2BHealthy & Fit" dated 7/26/2001; and two business personal property municipal tax levy invoices for the City of New Carrollton, Maryland to Tahisha

17

Brooks relating to "Ta'Hee Records for November 1, 2001 and February 8, 2001.

Defendant's Exhibit HC5    IRS Notice of refund of $2,482 to Tahisha B. Brooks dated December 31, 2002.

During the §2255 hearing, Brooks also produced a Goodyear Auto Service Center Invoice dated 1/27/04 as proof that she was in Wheeling, West Virginia, on the night before the trial. This fact has never been in dispute. Defendant's Exhibit HC6.

During his §2255 testimony, Pool explained that he rejected the documentary proof offered by Brooks. He explained it did not prove anything useful in Defendant's case. He further explained he was concerned that it could open the door to the United States cross examining Brooks and bringing in other evidence relative to an alleged theft of more than $20,000 from "Buddy's Bar-B-Que", a DC street vendor Jones was temporarily working for in June 2003 shortly before his coming to West Virginia (See Government Exhibit HC2).

When viewed in the same context as Pool viewed Brook's proffered documentation, it was not unreasonable for Pool to reject the documentation.   At best, the proffered documentation establishes Brooks, and to a lesser extent, Jones, jointly or severally owned several businesses in the Maryland / DC area. The documentation does not establish any income stream from the businesses or that the $9,500 Jones is asserted to have brought to West Virginia came from any one or combination of those businesses.   During her §2255 hearing  cross-examination, Brooks revealed that the money Jones brought with him to West Virginia was money she had saved over a period of years and was not withdrawn from any bank account such that a paper trail could be examined to establish the existence and withdrawal of the money.  The documentation Brooks proffered to Pool

has no relevance to whether Jones was involved in the bank robberies. Brooks and Jones offered the information to Pool as proof that Jones had his own money and, therefore, had no motive to rob banks. One does not tend to prove or disprove the other.

Considering the limited value of the Brooks evidence, Pool was right to be concerned about the United States' use of the park police investigation of the DC vendor theft under FRE 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, ow the general nature of any such evidence it intends to introduce at trial.

It cannot be said that Brooks' evidence or the United State's rebuttal evidence would not be stricken under FRE 403 or FRE 402.

Again, Jones fails to carry his burden of showing that he suffered any prejudice as a result of the strategic decision not to  produce Brooks as a witness and not to use her as a vehicle to introduce records showing that Jones and she had businesses separate and together in Maryland / DC and that Jones came to West Virginia with $9,500 to buy equipment for one of the businesses. If the evidence had been offered, it would not have proved or even tended to prove that Jones did not participate in the planning and execution of the armed robbery.

D.      Failure To Hire Fingerprint Expert

This issue was impliedly abandoned at the §2255 hearing. Jones offered no evidence with respect to the need to have his own fingerprint analyst testify at trial.

Had the issue been pursued, the decision to hire an expert is a strategic determination to be

made by the lawyer. The decision is governed by the rule of reasonableness. <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003). In situations where the government has its own expert, counsel may have good reason for not retaining his own. (<u>United States v. Bowman</u>, 348 F.3d 408 (4th Cir. 2003).

Because no evidence was offered on the issue, the undersigned has no basis upon which to determine the reasonableness of not retaining a fingerprint expert to analyze the fingerprints found on the gun believed to have been used in the armed robberies.

E.      Juror Observation Of Defendant In Shackles

At the conclusion of the second day of trial, the jury had been excused for the evening and Defendant was being prepared for removal from the Court by the Deputy Marshals. Defendant's counsel, Pool, was with the Defendant and the Deputy Marshals. Believing that all of the jurors had exited through the courtroom, the Deputy Marshals cuffed Jones' hands behind his back and gave him his file. The jury door then opened and a female juror stepped out into the courtroom. Deputy Marshal David Ahrens instructed the Defendant not to move, stood next to Defendant and Deputy Sara Beth Ahrens walked over and stood by Defendant until the juror exited the Courtroom. The next morning, Deputy Sara Beth Ahrens mentioned the incident to the trial judge. The trial judge convened the parties, including Defendant and his counsel, on the record. Deputy Sara Beth Ahrens reported the events and expressed her opinion that there was no way that the juror could see Defendant in restraints. The trial judge invited the parties to make comments. Defense counsel stated he did not know whether or not the juror may or may not have seen Jones in restraints. Notwithstanding his uncertainty, he announced his intent to take no action. Assistant United States Attorney McWilliams stated that there was no basis for a mistrial because there was no prejudice shown. He further stated that even if the juror saw the Defendant in restraints, the affected juror

could be excused and the trial could proceed to charging, closing arguments and verdict using the alternate juror.

According to Jones' §2255 testimony, a female Deputy Marshal moved to block the juror's view of Defendant. Defendant complained to his attorney that the juror had seen him in shackles and that a mistrial should be pursued. Counsel testified at the §2255 hearing that he did not believe the juror saw Defendant in shackles because of the positioning of Counsel and the Deputy Marshal between Defendant and the juror. Defendant, in his §2255 testimony, stated that his counsel was not present with him when he was seen by the juror in the Courtroom in shackles. Jones' §2255 testimony confirmed that the trial judge was told by the lady Deputy Marshal that she did not believe the juror saw Jones in shackles and that his attorney Pool told the trial judge he did not want to pursue the matter further.

It is undisputed that no further inquiry was conducted and no cautionary instruction was given to the jury and no motion for a mistrial was made.

Jones contends this conduct by counsel was ineffective and resulted in Jones not receiving a fair trial.

For purposes of this analysis, there is no evidence that a juror actually saw Defendant in shackles as asserted by Jones in his §2255 testimony. In addition, Jones merely speculates that the juror saw him in shackles.[7] Jones points to no actual prejudice. No evidence was offered at the §2255 hearing to show that any juror or jurors had been told one of their number had seen Jones in shackles or that any juror or jurors had taken into account that one of their number had seen Jones

---

[7]Defendant was handcuffed with his hands behind his back and was flanked on either side by others.

in shackles in their deliberations. No evidence was offered at the §2255 hearing to show that the jury deliberations were impacted in any way by one of the jurors seeing Jones in shackles.

The Fourth Circuit places the burden on the Defendant to establish prejudice. In the per curium decision of <u>United States v. Diamond</u>, 561 F.2d 557, 559 (4th Cir. 1977) the Court held in a direct appeal:

> Finally, we do not think that the district court was required to declare a mistrial because a juror inadvertently saw defendant Diamond in handcuffs during the course of the trial, since neither defendant has shown actual prejudice. <u>Wright v. State of Texas, 533 F.2d 185, 187 (5 Cir. 1976); United States v. Leach, 429 F.2d 956, 962-63 (8 Cir. 1970)</u>, cert. denied, <u>402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); Gregory v. United States, 365 F.2d 203, 205 (8 Cir. 1966)</u>, cert. denied, <u>385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); Way v. United States, 285 F.2d 253, 254 (10 Cir. 1960)</u>. See also <u>Corley v. Cardwell, 544 F.2d 349, 352 (9 Cir. 1977)</u>, cert. denied <u>(1977) 429 U.S. 1048, 97 S.Ct. 757, 50 L.Ed.2d 763</u>.

The sentence was overturned on other grounds and the defendant's case was remanded for re-sentencing.

In the unpublished opinion of <u>United States v. Smith</u>, 86 F.3d 1154 (4th Cir. 1996)(copy attached), the Court refused to reverse a conviction on the grounds that "the district court erred in denying their [defendants'] motion for a mistrial after the court was advised that at least one juror observed them in handcuffs as they were brought into court." Citing an Eighth Circuit case for the proposition that the "[D]efendant 'ha[d] the burden of demonstrating prejudice from the juror's brief, inadvertent exposure to him in custody", the Court held "[a]s in <u>Ford</u>, here the jury's exposure to the defendants in handcuffs was both brief and inadvertent. Outside the mere speculation, Smith and Monroe have not demonstrated that any prejudice resulted from the incident, and thus the district court did not abuse its discretion in denying the mistrial."

In another unpublished opinion, <u>United States v. Stevens</u>, 110 F.3d 61 (4th Cir. 1997)(copy attached), the Court again stated its position that there was no abuse of discretion in the trial court's denial of Stevens' motions for mistrial absent a showing of "any prejudice resulting from [Defendant's] momentary appearance in the courtroom in handcuffs as the jury was being admitted into the room."

Admittedly, <u>Stevens</u> and <u>Diamond</u> each involve the trial judge's refusal to grant a mistrial based on juror inadvertent observation of the defendant in handcuffs absent any showing of prejudice and this case involves the attorney not pursuing the claim of juror inadvertent observation of Jones in shackles beyond inquiry of the female Deputy Marshal. Here, however, there is no evidence that Jones was seen in shackles by the lone juror who entered the courtroom on her way home from the day's proceedings. Jones would have had Pool further pursue the matter with the presiding judge and possibly call attention to the isolated event with the other jurors by judicial questioning or instruction or simply declare a mistrial on the speculation and conjecture that the a juror did observe Defendant in shackles in the face of the Deputy Marshal's opinion to the contrary. To do so would have invited error. It is axiomatic that something more must exist other than speculation of a possible momentary observation of a defendant in shackles in order to trigger mistrial or the substitution of a regular juror by an alternate.

In another unpublished opinion, one that is highly analogous to the instant matter, the Fourth Circuit held: "To the extent that Dugger alleges that he was prejudiced by being seen in handcuffs on one occasion by some of the jurors, we find that he has no claim. Dugger's counsel pointed out the incident to the trial court but did not request a curative instruction or a mistrial." Finding no plain error, the Court concluded ". . . the incident was isolated, that Dugger failed to establish actual

prejudice, and that Dugger did not show that the incident affected the fairness of the trial." <u>United States v. Dugger</u>, 164 F.3d 626 (1998)(copy attached). In the instant case, the Deputy Marshal explained she did not believe the juror had seen Jones in shackles. It was reasonable for Pool to refuse to further pursue the matter further with the trial judge thereby risking drawing juror attention to the matter and possibly creating prejudice where there was none.

### Recommendation

For the reasons set forth herein it is recommended that Kofie A. Jones' motion for post conviction relief be **DENIED** and this case be **DISMISSED.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Opinion/Report and Recommendation to counsel of record.

Dated: June 21, 2007

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE