IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 1:03-cr-00047-FPS-01 |
| ) | |
| KOFIE AKIEM JONES, ) | FILED |
| Defendant. ) | JUN 2 2020 |
| | U.S. DISTRICT COURT-WVND |
| | WHEELING, WV 26003 |

MOTION FOR REDUCTION IN SENTENCE AND/OR COMPASSIONATE RELEASE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE FREDERICK P. STAMP, JR.:

Defendant, KOFIE AKIEM JONES ("Jones"), pro se, moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A) for the following relief:

### Relief Sought

Mr. Jones seeks a reduction in his sentence to time served or in the alternative, a compassionate release to serve the remainder of his sentence on home confinement for extraordinary and compelling reasons as set forth herein.

### Jurisdiction

This Court has jurisdiction to proceed in this matter in accordance with 18 U.S.C. § 3582(c)(1)(A)(i); the First Step Act ("FSA"), Pub. L. 115-391 (Dec. 21,

1

2018); and the CARES Act, H.R. 748 (signed into law Mar. 27, 2020). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) states, in relevant part, that "[t]he court may not modify a term of imprisonment once it is imposed except that—in any case— the court, ... upon motion of the defendant ... may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that — extraordinary and compelling reasons warrant such a reduction."

The FSA modified 18 U.S.C. § 3582(c)(1)(A)(i)'s catch-all provision. The FSA now allows either the Director of the Bureau of Prisons or the defendant to file a motion for a reduction in sentence/compassionate release. The only prerequisite to filing such a motion is that a defendant must first submit a request to the Warden and either await a denial or not receive a response within 30 days. Mr. Jones submitted his request for reduction in sentence/compassionate release ("RIS/CR") to the Warden of the Federal Correctional Institution at Manchester, Kentucky ("FCI Manchester"), Mr. J. Gilley, on April 15, 2020. No response has been received as of the date of this motion.

The CARES Act was signed into law on March 27, 2020, in section 12003(b)(2), provides that:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

2.

The "covered emergency period" began on March 13, 2020, when President Donald Trump declared a national emergency due to the COVID-19 pandemic. (See Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Conference, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-conference-3/ (issued Mar. 13, 2020).).

Accordingly, this Court's jurisdiction is properly invoked under 18 U.S.C. § 3582(c)(1)(A)(i); 5 U.S.C. §§ 702, 706.

## Background

Mr. Jones was indicted in 2003, and charged with attempted bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2, and Pinkerton v. United States (1946); armed robbery in violation of 18 U.S.C. § 2113(a),(d) and 2, and Pinkerton v. United States (1946); possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, and Pinkerton v. United States (1946); interference with commerce by threats and violence in violation of 18 U.S.C. §§ 1951 and 2, and Pinkerton v. United States (1946); and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii),(c)(i) and 2, and Pinkerton v. United States (1946). Jones was found guilty after jury trial and subsequently sentenced to mandatory terms of concurrent life imprisonment on all six counts to be followed by a five year term of supervised release on all six counts.

On September 17, 2012, Jones was resentenced by this Court to 414 years imprisonment after granting his motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 was granted.

## Grounds on Motion

3.

The motion of Kofie Akiem Jones respectfully shows:

a. Facts in support of motion.

Mr. Jones has served approximately 17 years of his current 44 year sentence of imprisonment. When Mr. Jones was resentenced on September 17, 2012, his sentences under the 18 U.S.C. § 924(c) convictions were statutorily mandated to be increased in time for the second count of conviction, i.e., Jones was sentenced to 7 years consecutive to the underlying offense term of imprisonment and an additional 25 years of imprisonment consecutive to all other sentences imposed for the section 924(c) convictions. However, if Jones were sentenced today for the same crime, the FSA would prohibit the mandatory "stacking" and time increase for the second 924(c) conviction, thus, only 7 years, as opposed to 32 years, could be imposed in addition to the underlying offense. Moreover, conviction and sentencing under both 924(c) counts is called into question after the Supreme Court's decision in United States v. Davis, 139 S Ct 2319 (2019), invalidated the residual clause of section 924(c)(3). Mr. Jones was charged with aiding and abetting (18 U.S.C. § 2) the robbery counts, the elements necessary to convict under 18 U.S.C. § 2 do not support a conviction under section 924(c)'s elements clause under the categorical approach. While Jones does not dispute that he can be punished as a principal for aiding and abetting a crime, the elements necessary to convict him are different from the principal offense elements and do not trigger the elements clause of 924(c)(3)(A). This would eliminate any conviction and sentence under Jones's 924(c) counts.

Finally, Mr. Jones suffers from epileptic seizures and hypertension, for which he is being medically treated by the Bureau of Prisons ("BOP").

4.

FCI Manchester was placed on quarantine April 14, 2020, tentatively through May 18, 2020, in response to the COVID-19 pandemic. The quarantine at FCI Manchester is wholly insufficient because, at no time, am I able to be 6 feet away from another person; the facility lacks any testing equipment or ability to accurately screen for the Coronavirus; staff is only temperature checked upon entry to the facility (temperature checks do not reveal the presence of virus carriers who are presymptomatic or asymptomatic, thus inhibiting identification, segregation, and quarantine, thereby allowing exposure and transmission); and staff routinely performs their duties and assignments without using their PPE's when coming into contact with inmates, food, or food containers. The CDC has stated a high-likelihood of the virus resurging in a "second wave", and that social distancing may even be extended through 2022. Mr. Jones is at an elevated risk of exposure to Coronavirus.

b. Argument and authorities.

A term of imprisonment can be reduced only if "extraordinary and compelling reasons warrant reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress has tasked the United States Sentencing Commission with defining the phrase "extraordinary and compelling" and has also required that any judicial order modifying a sentence be "consistent with applicable policy statements issued by the Sentencing Commission." See 28 U.S.C. § 994(t); 18 U.S.C. § 3582(c)(1)(A) (Before passage of the First Step Act of 2018, Pub.L. 115-391, 132 Stat. 5194 (December 21, 2018), district courts could grant compassionate release sentence reductions only upon a motion by the Bureau of Prisons Director. United States v. Beck, No. 1:13-cr-00186-6, 2019 WL 2716505 at *4 (M.D.N.C. June 28, 2019)). After the FSA, a motion for modification may be brought

5.

directly by the prisoner. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission policy statements have not been updated to reflect the passage of the First Step Act of 2018 and are unlikely to be updated any time soon because there are currently an insufficient number of appointed commissioners. See United States v. Brown, No. 4:05-cr-00227-1, 2019 WL 4942051 at *2, n.1 (S.D. Iowa Oct. 8, 2019)("As district courts have often noted this year, the Sentencing Commission has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting Commissioners."). The FSA empowers the Court to provide relief notwithstanding that policy. While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role. It is also inconsistent with the FSA, which was enacted to further increase the use of compassionate release and explicitly allows courts to grant such motions even when the BOP finds they are not appropriate. Courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement. Beck, 2019 WL 2716505 at *5-6; see also United States v. Cantu, No. 1:05-cr-00458-1, 2019 WL 2498923 at *5 (S.D. Tex. June 17, 2019) ("[T]he correct interpretation of 3582(c)(1)(A) based on the text, statutory history and structure and consideration of Congress's ability to override any of the Commission's policy statement at any time ... is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. 1B1.13 cmt. n. 1(A)-(c) warrant granting relief.").

Accord United States v. Cantu-Rivera, No. H-89-204, 2019 WL 2578272 at *2 n.1 (S.D.Tex. June 24, 2019); United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086 at *3 (D. Me. July 11, 2019); United States v. Rivernider, No. 3:10-cr-222 (RNC), 2019 WL 3816671 at *2 (D. Conn. Aug. 14, 2019); United States v. Bucci, No. 04-10194-WGY, 2019 WL 5075964 at *1 (D. Mass. Sept. 16, 2019); United State v. Brown, No. 4:05-cr-00227-1, 2019 WL 4942051 at *4 (S.D. Iowa Oct. 8, 2019) United States v. Urkevich, No. 8:03-cr-37, 2019 WL 6037391 at *3 (D. Neb. Nov. 14, 2019); United States v. Dusenberry, No. 5:91-cr-291, 2019 WL 6111418 at *3, n.3 (N.D. Ohio Nov. 18, 2019); United States v. Valdez, No. 3:98-cr-0133-01-HR 2019 WL 7373023 at *2-3 (D. Alaska Dec. 31, 2019); United States v. Schmitt, No. CR12-4076-LTS, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020). The key change made by the FSA is the removal of the Director of BOP's role as gatekeeper.

 Accordingly, Jones must demonstrate that there is an "extraordinary and compelling reason" to reduce his sentence. Mr. Jones's sentence should be reduced primarily because of his age at the time of arrest and conviction, the length of the sentence imposed, and the fact that Congress modified the penalty structure that applies to Mr. Jones's crimes. In this case, Jones was sentenced to 7 years imprisonment for one violation of 18 U.S.C. § 924(c) and twenty-five years imprisonment for the second violation of 18 U.S.C. § 924(c) all to be served consecutively, as required by the mandatory minimum sentencing structure in place in 2012. As part of the FSA, Congress eliminated the consecutive stacking that was required for 924(c) sentences. 18 U.S.C. § 924(c) imposes a sentencing enhancement for "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." The First Step Act clarified that 924(c) counts can only be stacked if the second

offense occurs after a final conviction on the first offense. §403(a), 132 Stat. at 5221-22. In other words, if sentenced today, a court would add only 7 years to the defendant's sentence, not 32 years. Brown, 2019 WL 4942051 at *5. The defendant was only 28 years old and suffering from an extended period of depression leading to the severe abuse of PCP initiated by the passing of his father. The death of Mr. Jones's father had a significant impact on his mental stability due to the strong bond shared between Jones and his father. Mr. Jones did commit a crime and was initially sentenced to a term of life in prison. Even upon his resentencing, Jones was given 7 years imprisonment for the first 924(c) conviction, and an additional consecutive 25 years imprisonment for his second 924(c) conviction. That means that of the 44-year term of imprisonment that Jones was resentenced to, 32 of those years are for the 924(c) convictions.

However, if Jones was resentenced today, he would only receive 7 years for his first 924(c) conviction and another 7 years for the second 924(c) offense, resulting in 14 years rather than 32 years. The court in Brown strongly implied that changes to how 924(c) sentences are calculated could be an extraordinary and compelling reason to modify a sentence. Brown, 2019 WL 4942051 at *5. The FSA, as noted, prohibits stacking 924(c) offenses unless the second offense occurs after a final conviction on the first offense. When combined together, the defendant's age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence. The Sentencing Commission has noted an "extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. The fact that an extraordinary and compelling reasons reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S.

8.

SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.2.

The <u>Cantu-Rivera</u> court also took the length of the sentence into account when it provided relief, to wit:

> Mr. Cantu-Rivera also meets the requirements of USSG 1B1.13, comment. (n.1(D)), which permits a reduction when "there exists in defendant's case an extraordinary and compelling reason other than, or in combination with," the remainder of the Guideline definition. Such a combination of factors is present in this case. The Court also recognizes the extraordinary degree of rehabilitation Mr. Cantu-Rivera has accomplished during the 30 years he has been incarcerated.... Finally, the Court recognizes as a factor in this combination the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions.... The combination of all these factors establishes the extraordinary and compelling reasons justifying the reduction in sentence in this case.
>
> — <u>United States v. Cantu-Rivera</u>, 2019 WL 2578272 at *2.

At least one district court has modified a sentence based solely on the First Step Act's changes to 924(c) sentencing. See <u>United States v. Urkevich</u>, 2019 WL 6037391 ("The government acknowledges that Urkevich's three firearms counts would have carried mandatory terms of 60 months each (180 months) and not 300 months for Counts III and V (660 months total) if he had been sentenced after the effective date of the First Step Act. Accordingly, the sentence he is serving (848 months) is forty years longer than the sentence he likely

9.

would have received (368 months) if he were sentenced under 18 U.S.C. § 924(c)(1)(C) as it now exists. A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed. Urkevich, 2019 WL 6037391 at *2-4.

Jones's case is somewhat identical to the aforementioned cases. In those cases, the courts took the lengthy incarceration of the defendants into consideration for determining a reduction in sentence. Additionally, the Court should further consider the impact of the Supreme Court's decision in United States v. Davis, 139 S Ct 2319 (2019), and its potential impact on Jones's 924(c) convictions. Because Jones was convicted of the aiding and abetting statute (18 U.S.C. §2) to the principal crimes of armed robbery and Hobbs Act robbery, and a circuit split has arisen with regard whether a Hobbs Act robbery is a crime of violence or not under the elements clause of 924(c)(3)(A), Mr. Jones's 924(c) convictions may be in doubt altogether. At the very least, the Court should weigh the fact that the elements to convict a person of aiding and abetting a crime do not categorically meet the definition for a crime of violence under 924(c)(3)(A)'s elements clause. Thus, Jones may be in a potential position to invalidate his 924(c) convictions, which would eliminate any sentence thereunder and send Jones home with time served.

Alternatively, the Court should strongly consider placing Jones into home confinement. 18 U.S.C. §§ 3624(c)(2); 3582(c)(1)(A)(i). The CARES Act was passed in response to the COVID-19 pandemic, and section 12003(b)(2) greatly expands the authority and discretion of the Director of the BOP to place inmates into home confinement for any length of time. As such, the new authority conferred on the director appears to invoke the Administrative Procedures Act ("APA") and its judicial review authority. The APA defines "agency action" to

include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The APA separately defines each of the terms used in this definition. An "order" is "the whole or a part of a final disposition... of an agency in a matter other than rulemaking but including licensing." Id. at § 551(6). A "sanction" includes "the whole or a part of an agency (A) prohibition, requirement, limitation, or other condition affecting the freedom of a person." Id. at § 551(10). Mr. Jones submitted his request to the Warden to be placed on home confinement in writing on April 15, 2020. Failure to respond or justify a denial with a statement of reasons is "arbitrary" and "capricious" in violation of the APA and can be appealed to the courts. 5 U.S.C. §§ 702, 706(2)(A); see, e.g., Auer v. Robbins, 519 US 452, 458-459 (1997). The withholding of a decision, or indefinitely delaying a decision, or giving a flat categorical denial without a reasoned response, not only violates 5 U.S.C. § 555(e) mandatory provisions, it implicates the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Cons Amend. 8.

  Mr. Jones suffers from, and is being treated for, hypertension and epileptic seizures. Hypertension is one of the conditions the CDC has stated elevates the risk and mortality rate of contracting Coronavirus. The BOP's response to the national emergency declared by President Donald Trump on March 13, 2020, was to impose a quarantine on all inmates at all facilities nationwide. Other measures implemented are ad hoc and at staff discretion. The greatest risk of contracting the Coronavirus comes from staff members who are exposed to infected people in the community and brought into the facility. FCI Manchester is only screened (staff, upon entry to the facility; and inmates approximately once per week) using a simple temperature check, which cannot reveal pre-symptomatic or asymptomatic infected persons. At no time is Mr. Jones six feet distant from another person, especially staff members when feeding inmates in cell or picking up trash or showering

inmates out of cell. FCI Manchester staff routinely do not use PPE devices and claim it is optional for staff but mandatory for inmates. Coronavirus is transmitted through the eyes, nose, and mouth. Inmate issued PPE's do not protect the eyes at all and are determined to be unsuitable for good or adequate protection according to CDC established guidelines. PPE masks are intended to inhibit the transmission of Coronavirus by the transmittor (not the transmittee) by covering the nose and mouth from projecting Coronavirus through breathing, coughing, or sneezing. Staff's discretionary use (and routine non-use) of PPE's when interacting with inmates, preparing food, and handling the food containers — which has been determined by the CDC that Coronavirus survives on for up to 72 hours — puts Mr. Jones and other similarly situated inmates at FCI Manchester at a greater risk to contract the virus and possibly suffer death therefrom. Mr. Jones is in a dangerous situation in that he is physically prohibited from protecting himself from infection and the staff's deliberate indifference or wilfull negligence in protecting Mr. Jones, has an increasingly elevated potential of causing his death through viral contraction through no decision or fault of his own. The CDC and medical community anticipate a COVID-19 resurgence or "second wave" by December of 2020, and that social distancing should be maintained through 2022.

## Conclusion

Mr. Jones has been incarcerated for 17 years of a 44 year sentence that Congress has now deemed unwarranted for the crimes committed. Mr. Jones was married on December 23, 1999 and has been married for over 20 years. He has four children who, at the time of his arrest, were 7 years old (son), 6 years old (son), and two daughters that were 2 years old and six months old, respectively

12.

Mr. Jones has had to watch his children grow up from inside the prison system. He has a home and a wife he can be released to safely. While Mr. Jones was sentenced to a lengthy period of time — that, again, has been deemed unwarranted for the crimes committed — he was not sentenced to death. The lax "care" and adherence to any guidelines in this COVID-19 pandemic, along with Mr. Jones unable to protect himself through no fault of his own, makes the spectre of his death in prison at the hands of the Coronavirus a very real and sobering nightmare. This Court should exercise its discretion and reduce Jones's sentence or in the alternative, place him into home confinement as urgently as possible.

WHEREFORE, PREMISES CONSIDERED, Kofie Akiem Jones, respectfully requests this honorable Court to GRANT his motion and enter an ORDER to reduce his sentence to time served and release him to supervised release, or in the alternative enter an ORDER directing his placement into home confinement for service of his term of imprisonment under any reduced sentence or otherwise. [See: Additional Exhibits]

DATED: 27 April 2020
Manchester, Kentucky

Respectfully submitted,

*Kofie A. Jones*

KOFIE AKIEM JONES #04584-087
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4000
MANCHESTER, KY 40962-4000
DEFENDANT, pro se

13.

## CERTIFICATE OF SERVICE

I, Kofie A. Jones Sr. hereby certify on the 15 day of May 20 20, deposited a copy of my 3582 Motion along with supporting documents to US District Court Northern District of West Virginia in US mail addressed to Honorable Judge Stamp 1125 Chapline Street PO Box 791 Wheeling, WV 26003.

x _Kofie A Jones Sr. sig_     Date: May 15, 2020

Kofie Akiem Jones Sr.
FCI Manchester
PO Box 4000
Manchester, KY 40926